Appeal of **W. J. PERRY CORPORATION.**    Docket No. 1360.

The taxpayer is not entitled to be classified as a personal service corporation for 1919.

Submitted March 13, 1925; decided March 17, 1925.

*James A. Councilor, C. P. A.*, for the taxpayer.

*J. Arthur Adams, Esq.*, for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

### FINDINGS OF FACT.

1. The taxpayer was incorporated in 1909 under the laws of the State of Virginia and has its principal office at Staunton, Va. Upon incorporation it took over the business which W. J. Perry previously had conducted at Staunton as general agent of the Maryland Casualty Co. and as local agent or broker in placing casualty insurance, fire insurance, life insurance, and related business. There was issued $7,500 par value of common stock and approximately $6,000 of preferred stock. The preferred stock was sold to residents of Staunton and vicinity, and the common stock and $5,000, received from the proceeds of the sale of the preferred stock, were paid to Perry for his business.

2. Of the capital stock there was outstanding at the beginning of the taxable year $7,500 of common stock and $5,170 of preferred stock. W. J. Perry owned the entire issue of the common stock. The preferred stock was held as follows:

| | |
|---|---:|
| J. H. Price | $100 |
| J. M. Perry | 200 |
| Thomas H. Russell | 500 |
| W. G. Kable | 500 |
| Frank T. Holt | 500 |
| R. H. Fifer | 100 |
| Mrs. M. E. B. Koiner | 100 |
| John O. Jacob | 500 |
| F. B. Whitmore | 1,000 |
| G. W. Wiseman | 100 |
| W. E. Tribbett | 100 |

Y. M. C. A. of S. M. A._____ $160
Mrs. M. K. Russell_____ 300
Mrs. Nettie R. Holt_____ 500
W. B. Kniseley_____ 250
Mrs. M. C. Perry_____ 260

    Total _____ 5,170

3. The net income of the taxpayer for the year 1919 was $8,489.48, of which the preferred stockholders were entitled to and received $344.40 as dividends.

4. The services rendered by the corporation consisted of soliciting insurance risks, writing and delivering insurance policies to the insured, collecting and remitting the premiums thereon (less commissions) to the insurance companies, and the supervision of approximately 75 subagents of the Maryland Casualty Co.

5. W. J. Perry, president, and R. E. Fifer, secretary and treasurer, devoted all of their time to the business. The other stockholders were not regularly and actively engaged in the conduct of the business.

6. The taxpayer had no paid employees during the taxable year with the exception of the customary office force and one solicitor who was paid for salary and expenses a total of $1,839.65, which exceeded by over $1,000 the returns by way of commissions which he earned for the taxpayer.

7. The business of the taxpayer is divided roughly into two classes: First, the local agency business writing various classes of insurance, indemnity bonds, etc., and, second, a general agency business in which some 75 subagents are employed. Approximately 70 per cent of the gross income and 50 per cent of the net income of the company for 1919 was from commissions upon business secured by subagents, and 30 per cent of the gross income and 50 per cent of the net income from local agency business.

8. W. J. Perry devoted a substantial portion of his time at Staunton to the administration of the entire business. He spent approximately 10 weeks during 1919, divided into a number of periods, in the field, calling upon customers and supervising the work of subagents.

9. At no time during the history of the corporation has it been absolutely necessary to borrow money. During 1919 the taxpayer borrowed no money except $300 for 10 days; $500 for 15 days; and $600 for 15 days, which sums were paid as and when due.

10. The accounts receivable and accounts payable for insurance premiums on the books of the taxpayer at the close of each of the last seven months of the taxable year were as follows:

| Date | Accounts receivable | Accounts payable | Date | Accounts receivable | Accounts payable |
|---|---|---|---|---|---|
| June 30_____ | $39,207.52 | $32,231.35 | Oct. 31_____ | $28,505.82 | $21,438.92 |
| July 31_____ | 41,920.81 | 30,900.16 | Nov. 30_____ | 32,037.77 | 26,402.72 |
| Aug. 31_____ | 38,844.24 | 29,693.26 | Dec. 31_____ | 30,625.93 | 23,315.56 |
| Sept. 30_____ | 29,914.23 | 21,760.46 | | | |

11. The terms granted by the insurance companies were ordinarily from 15 to 30 days longer than those granted by the taxpayer

to its customers, and on account of peculiar conditions existing in this territory the insurance companies did not insist upon a strict compliance with their terms but were lenient in their enforcement, generally suiting their demands to the necessities of the taxpayer.

12. A large part of the business of the taxpayer consists of compensation or liability insurance written on the pay-roll basis. In 1919 there was a large amount of excess premiums due on such policies which was carried on the books as payable to the insurance companies and included in the amounts shown under item 10. For the last seven months of the year these averaged over $9,200. By agreement these amounts were never paid to the insurance company until after the respective accounts had been adjusted with the insured and the premiums collected by the taxpayer.

13. Upon occasions the taxpayer used the collections from customers, who had paid their premiums before they were due to be paid by the taxpayer to the insurance companies, to advance the premiums of policyholders whose accounts had not been collected.

14. The subagents mentioned in item 4 were employees of the Maryland Casualty Co., and income derived by the taxpayer from the general agency business was paid to it by the Maryland Casualty Co. in consideration for the organization, development, and supervision of the territory covered by the general agency contract.

### DECISION.

The facts in this appeal are substantially the same as those in the *Appeal of Joseph Emsheimer Insurance Agency*, 1 B. T. A. 649. Approximately one-half of the net income of the taxpayer is ascribable primarily to the activities of subagents. Such income is not ascribable primarily to the activities of the principal stockholders of the taxpayer.

The determination of the Commissioner is approved.